May it please the Court. Good morning, Your Honor. This morning, Your Honor, I will be arguing for a reversal of Dr. Grillo's complaint that was dismissed by the District Court under Rule 12b-6. The standard of review for this dismissal is de novo. Therefore, the Court will set all the facts that are alleged, properly pleaded facts in the complaint and see whether we made out a case that is entitled to any form of relief under the rules. Fundamentally, Your Honor, the issue is Dr. Grillo was not even on the underlying issue. There was a prison brawl sometime in the year 2000 in June. There was a prison brawl that occurred in Salinas Valley Correctional Center, which resulted in one prisoner hitting another prisoner with a brick. That resulted in the injured person becoming quadriplegic. Dr. Grillo was a physician. He's a cardiothoracic surgeon, but working as a physician at that facility, and he was not even on duty on that day. And yet, as it happened, the CDC, the California Department of Corrections, placed him on an administrative leave, charged him with extreme negligence, gross negligence, criminal negligence, or various charges, prosecuted him through the California Medical Board, got his license revoked, and he became unemployed, discharged him because he didn't have a license, and now in 2004, 2005, January, discharged him, and we filed a petition in June of 2005 after filing an EEOC charge and receiving a right to sue letter. Subsequently, the prisoner who was injured, Mr. Holcomb, filed a lawsuit against Dr. Grillo and other physicians as well as the CDC, and the outcome of that case was about a few months ago, the CDC settled that case, paid a substantial amount of money to Mr. Holcomb. That fact, I respectfully request the Court to take judicial note on, and I will file the papers on that with the Court for judicial notice. Can I ask you just a factual question that, in my study of the record, it wasn't clear to me, and that is the, with respect to counts one and four, the argument that section 1668 bars the unenforceability, makes unenforceable the settlement agreement. Yes. Did you raise that argument before the district court? I believe I did, Your Honor. Okay. I filed that argument somewhere in the, because I ---- The district court opinion doesn't discuss that at all. It doesn't discuss it. The opinion doesn't discuss it. I raised the argument in the district court. Basically, the fundamental idea, which is the common tenet in every state law and throughout the world, I believe, is you cannot prospectively release somebody for their own acts of negligence, and any release that operate that is so broadly construed as to cover future acts of negligence is void, and therefore, that is one of the issues that is before this Court. But now, the settlement agreement, just to remind me, was that 2002? Yes, Your Honor. Okay. And the events that took place with this prisoner were which date? That was in 2000. So why wouldn't the settlement agreement be valid at least as to all conduct prior to 2002? Well, the idea is whether the settlement agreement is void and enforceable at all. Right. Well, it cannot be forced into I will only apply to this period and not the other period. If it is so broadly construed as to cover the entirety of it, then it is void ab initio. It cannot be ---- it is of no effect. We cannot divide it up and say, well, on the date of the settlement agreement, as of that date, we apply all the prior acts. Most importantly, Your Honor, Dr. Grillo was employed by CDC. After that settlement agreement, the settlement agreement was transferred to the union, and the union representative and the CDC got together, somehow said, you don't do anything, I don't do anything, he will go back to work. They did that, and he was under the impression that his license would be intact and his job would be intact, and he could continue to work there. Well, let me just ask you, if he didn't have a license, he couldn't practice medicine, correct? Yes. So following the settlement agreement, the reason he was terminated is that he didn't have a license, is that correct? No, they suspended his license. I know there's a race issue involved from your perspective, but if he didn't have a license, which is given by the State, correct? Yes. Then he can't be employed as a doctor. Yes. They used it. That is the mystery in this whole case, Your Honor. I did that license hearing also. I was the counsel that represented Dr. Grillo before the administrative hearing. What they said was they used the same 2002 settlement agreement, which says I'm not going to challenge what happened in June 2000. In June 2000, he wasn't even on the job. He came the following day, and they charged him and another doctor, David Clark, with gross negligence for not taking care of this patient who was already irrevocably quadriplegic. I mean, his spinal cord, L4, L5, were broken because somebody hit him with a concrete brick. So he was already damaged, and yet the physician that came the second day was charged with gross negligence and suspended, and they entered into a settlement, and then they used that settlement, in which the counsel for the State and the CDC wrote that I'm not going to challenge what happened at that thing. And, therefore, they barred me from even raising at the administrative hearing as to what is the underlying charge. So they sent him. It's kind of one after the other. First, they made him agree that I'm not going to challenge. Then they put him into a test with this so-called continuing education course, and the continuing education course, they said you failed in it, and we wanted to challenge that. But they didn't allow us to challenge that either. Counsel, I wanted to ask you a question. Under the regulations of the medical board, when can they require a doctor to take a reexamination or an assessment test? What are the regulations? Under the regulations, if there is a charge against him, they cannot require any physician at all except when he consents to it. They made him consent to take this thing under the impression, giving him the impression that, oh, if you take this continuing education course, everything will be all right. And then they called it a test, and they were controlling the test. Dr. Norcross worked for the University of California, San Diego, and the same CDC's lawyer, Ms. Dombrowski, who is sitting here in the audience here, was the lawyer for the state, for the CDC, and for the medical board, and she was the one who drafted Dr. Norcross's declaration saying that he failed the exam, even though he was given a passing grade. Did you want to reserve the remaining time? Yes, Your Honor. I didn't ask you, it's just a curiosity, but I noticed that you come from Missouri. Yes, Your Honor. And I'm wondering if you just happened to have moved, and you're used to practice in California, and you moved here. I used to practice here. That's what I figured, that you've now moved to Missouri. All right. I just noticed that on the docket sheet. Thank you. Now, the remaining time is reserved for you for rebuttal. Good morning. Austin Kattermull for the Department of Corrections and Rehabilitation in the State of California. Together with the California Medical Board, we filed a joint brief. Counsel for the medical board, Ms. Dombrowski, is present. Also present is counsel for Dr. Norcross, an appellee, Ms. McDonough. She will be arguing on his behalf. I'll be arguing for the state agencies. Are you taking five minutes, or what is it? I'm hoping to take about five to seven minutes. All right. Counsel, would you start out by answering my question as to under what regulations the medical board required him to take a new test? What happened, Your Honor, was as a result of the incident in 2000 with the inmate, the CDCR, his employer, filed a complaint with the medical board. The medical board then has its own licensing authority to investigate a license, and what happened was they entered into a 2003 settlement with Dr. Grillo at the consent of an attorney that he would attend this physician assessment program called PACE. So I can't point to a specific regulation, but what I can say is that at his own consent, Dr. Grillo entered into a stipulated agreement with the medical board. And I think at the heart of this case is a confusion between the CDCR, which is his employer, Dr. Grillo's employer, and the California Medical Board, which is the licensing authority. In 2002, Dr. Grillo and his employer entered into an admitted release settlement regarding the claims concerning the inmate negligence in 2000. At that point, there had already been a complaint by his employer to the medical board. At that point, the medical board went forward with its own licensing investigation, and it entered into various stipulated settlements with Dr. Grillo that culminated in Dr. Grillo losing his medical license. Then the CDCR had no choice, had no choice but to discharge him. He didn't have a license. He couldn't practice medicine. Well, let's say we spot you that for the moment at least, counsel. Why isn't there still a civil rights claim with respect to forcing Dr. Grillo to go through the PACE program, given that apparently there's no regulation that required it? Well, so there would be an allegation that the licensing authority somehow violated his civil rights? Well, not the licensing authority, but the CDC. Well, that's the distinction, is the CDC had nothing to do with that. The CDC didn't force him to go through the PACE program? No. CMB? That was the CMB. That was a licensing authority issue. CMB, the Department of Corrections here is the employer. They're like a private hospital. I understand that, but it had to be. So your contention is if I go look at the record, I'm going to see no involvement with the CDC in forcing Dr. Grillo to go through the PACE program? That's correct. Okay. On count three, why is the district court's sovereign immunity holding correct in light of the fact that the Supreme Court's now repeatedly told us in Seabox v. Humphreys and Gomez-Perez that statutes that incorporate discrimination claims often also have retaliation claims attached? So you're speaking of the 42 U.S.C. 1997 claim, the institution? Count three, the CRIPA claim. The CRIPA claim. Well, I think, you know, there's not a lot of case law on this. The one case that we cite in our papers is the Prince case out of the Fifth Circuit. It does look at the legislative history of this statute, and it's specific to institutionalized persons. And it goes through the analysis, and it says, look, this wasn't intended for employees. It was intended for a specific class of persons. Well, that's a different argument. That's the who has a right of action under CRIPA. But before we get to that, you have a sovereign immunity argument that you've made that the district court accepted so that we couldn't even reach the question of whether there's an individual implied right of action or not. We have no jurisdiction, you've argued, under sovereign immunity. And the district court agreed with you, but did so primarily on the basis that CRIPA as a discrimination statute doesn't encompass a retaliation claim like the one that Dr. Grillo seeks to make. But the Supreme Court seems to have viewed 1981 and VADA with similar language rather differently. Well, I guess I would – first, I would dodge your question by saying that I think that even – How about not dodging my question? All right. Well – Dodge it later. Okay. I'm going to address it by saying that the Eleventh Amendment does bar actions against the State in 1983 cases, and that there's no – there's simply no evidence here in this specific statute that – or any guidance from the Supreme Court that CRIPA is analogous to Section 1981 or 1982. Those were – those were statutes passed after the Civil War that had specific groups in mind to protect. Well, the ADA isn't exactly a Civil War statute. Okay. Well, let me – let me try to say it this way, that if his allegation against CDCR is about something regarding his employment, it was clearly released. He signed a release in 2002. So what is the retaliation? What are the protected speech? What is the adverse employment action? That would concern his employment issues, not licensing issues. And with that said, I would like to turn it over to Ms. McDonough unless the Court has further questions. All right. May it please the Court. Sandra McDonough for Defendant in Appellee Dr. William Norcross. Dr. Norcross is not a proper party to this appeal because Dr. Grillo voluntarily dismissed him without prejudice from the underlying action. However, in an abundance of caution, Dr. Norcross filed a brief in this matter because this Court at one time issued an order requesting that Dr. Norcross file a joint brief with the co-defendants. That order was later withdrawn, but still in abundance of caution we filed one. Also, as you may have seen in the papers, Dr. Grillo has requested leave to file an amended complaint against Dr. Norcross in this action. Leave is inappropriate because Dr. Grillo voluntarily dismissed Dr. Norcross without prejudice. Dr. Grillo therefore had the ability to bring another action against Dr. Norcross at any time, as he indicated in his request for dismissal without prejudice. He has not done so to date. To grant leave at this point, I assume that Dr. Grillo will try to relate back his Section 1983 claim that he proposes to allege against Dr. Norcross to the original filing date of the complaint. But such a claim would be time-barred at this point. And it should not relate back since Dr. Norcross was dismissed without prejudice voluntarily. Therefore, Dr. Norcross respectfully requests that this Court dismiss Dr. Norcross from this appeal or, in the alternative, deny leave to amend. Thank you. You have about a minute and a half. Going to the question about whether we preserved the argument about the Section 1668, whether Section 1668 barred the 1668 argument, on page 125 of the record that I filed, Your Honor, I specifically asked the opposing side to clarify whether they were applying the release only up until the acts until the date of the release or whether they were construing the release to cover the acts subsequent to the release date. They never clarified it. They were constantly arguing that the admitted release barred all the claims. Therefore, that issue came up in the ---- Can I ask you another just record kind of question about these things on the that you gave your colleague a hard time about. Your turn now. Did you on appeal ever contest the district court's dismissal on sovereign immunity grounds? I see an argument in your blue brief about that credit doesn't have a private right of action, but I, for one, couldn't see anything particular about sovereign immunity, and I just hope I'm not missing something. Point number three, Your Honor, does the doctrine of sovereign immunity on page one of the appeals brief bar suits against states or state agencies that receive federal funds despite a clear showing that Congress has validly abrogated the Eleventh Amendment immunity by conditioning the receipt of funds? Yeah, no, I saw that. But then when I get back to the brief on section four, it's entirely about price and whether there's a private right of action. On page 14, I mentioned Seabox v. Humphreys stating that holding that one may bring a retaliation claim under section 81. But it's all about third-party rights. Under Massey, Dr. Grillo does not assert third-party rights. Okay. All right. I see your argument. Are those the only two places where arguably you mentioned sovereign immunity? That point, in that point, I kind of went into the sovereign immunity part of the argument, Your Honor. I didn't create – I guess I didn't create a new heading for it. Okay. No heading required. No heading required. He didn't actually argue no heading required. That's right. Thank you for your argument. The case just argued is submitted. Grillo v. The California Department of Corrections. Thank you.
judges: Fletcher, McKeown, Gorsuch